# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONALD L.,[1] | ) |
| | ) No. 18 CV 5734 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security, | ) |
| | ) July 24, 2019 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Donald L. ("Donald") seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging that he is disabled by a bulging disc in his back, seizures, and one-sided nose breathing. After the Commissioner of Social Security denied his applications, Donald filed this lawsuit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court is Donald's motion for summary judgment. For the following reasons, the motion is denied, and the Commissioner's decision is affirmed:

## Procedural History

Donald filed his applications for DIB and SSI in February 2014, alleging a disability onset date of January 1, 2014. (Administrative Record ("A.R.") 190-96, 197-202.) After his applications were denied initially and upon reconsideration, (id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

66-115, 123-35), Donald sought and was granted a hearing before an administrative law judge ("ALJ"), (id. at 154). In April 2016 Donald appeared for the hearing along with his attorney and a vocational expert ("VE"). (Id. at 31-65.) The ALJ issued a decision in May 2016 finding that Donald is not disabled. (Id. at 12-30.) When the Appeals Council declined Donald's request for review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Donald filed this lawsuit seeking judicial review of the Commissioner's decision, *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 8).

## Background

Donald asserts that he initially injured his back while lifting a container at work in October 2013, (A.R. 329), and stopped working after developing severe low back pain following a second work-related accident two months later, (id. at 34, 329). At the time of his April 2016 hearing before the ALJ, Donald's worker's compensation claim relating to the second accident was pending. (Id.) During the hearing, Donald presented medical and testimonial evidence in support of his disability claims.

**A.    Medical Evidence**

In January 2014 Dr. Fred Turk, a chiropractor, performed an MRI of Donald's lumbar spine, which revealed degenerative disc disease. (A.R. 313.) Dr. Turk's examination of Donald's lower back revealed an antalgic stance, spinal tenderness, limited range of motion, positive straight leg raising, and tingling and weakness in his lower left extremity. (Id. at 329.) In March 2014 Dr. Turk stated that Donald

2

was "asymptomatic" but noted that "[f]uture relapse cannot be ruled out in this case." (Id. at 330.)

Donald was also evaluated by another chiropractor in March 2014, (id. at 336), and began physical therapy the following month, (id. at 458). Donald told his physical therapist that he had been wearing a back brace since October 2013 and that he was experiencing low back pain which was preventing him from having a normal lifestyle. (Id.) He further explained that bending over, emptying garbage cans, doing laundry, carrying less than 10 to 15 pounds, standing less than 15 minutes, and sitting for 30 minutes to one hour caused back pain. (Id.) During his initial physical therapy evaluation, Donald demonstrated decreased muscle strength in his lower extremities and pain with transitional movements. (Id.)

In May 2014 Donald presented to Dr. Liana Palacci for a physical consultative examination. (Id. at 362.) Donald was diagnosed with a seizure disorder when he was 19 years old and has been on medication ever since. (Id. at 363.) His seizures are characterized by tonic-clonic activity, urinary incontinence, and post-ictal confusion. (Id.) Donald informed Dr. Palacci that he has been experiencing low back pain since 2013 and that both walking and climbing stairs exacerbate the pain, but that pain medication resolves his discomfort. (Id.) During his physical exam, Donald demonstrated normal range of motion in his extremities, negative straight leg raising, and normal gait. (Id. at 364.)

Also, in May 2014 state agency medical consultant Dr. James Madison opined that Donald can: occasionally lift or carry 20 pounds; frequently lift 10 pounds;

3

occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and stand, walk, and sit about 6 hours in an 8-hour workday. (Id. at 80-81.) He further opined that Donald can never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to hazards. (Id.) Dr. Madison concluded that Donald was not disabled and that he could perform light work. (Id. at 82.)

In October 2014 Dr. Turk completed a "Lumbar Spine Residual Functional Capacity Questionnaire" in which he stated that Donald demonstrated an abnormal gait, tenderness, muscle spasms and weakness, and reduced range of motion in his spine. (Id. at 588-89.) Dr. Turk opined that Donald can walk one city block without rest or severe pain, can sit for 30 minutes at a time, can stand for 5 minutes at a time, can walk less than 2 hours in an 8-hour workday, can lift less than 10 pounds, and can never perform postural movements. (Id. at 589-91.) Dr. Turk further opined that Donald would constantly experience pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (Id. at 589.) Dr. Turk also opined that Donald needs to take unscheduled breaks and use an assistive device, and that he would miss more than four days of work per month. (Id. at 590-91.)

In December 2014 Dr. Charles Kenney assessed the same exertional limitations as Dr. Madison. (Id. at 80.) Dr. Kenney further opined that Donald can balance, occasionally climb stairs, frequently stoop, kneel, crouch, and crawl but cannot climb ladders, ropes, or scaffolds and must avoid concentrated exposure to

4

hazards. (Id. at 94-95.) He also concluded that Donald was not disabled and could perform light work. (Id. at 98.)

**B.    Hearing Testimony**

Donald testified that he currently lives with his mother in a building owned by his sister. (A.R. 38.) Although he keeps his room clean, Donald stated that he does not complete many household chores. (Id.) He can dress himself, shower, clean, and shop without help. (Id. at 56-59.) Donald explained that both walking and climbing stairs are difficult without his back brace. (Id. at 39.) He testified that he does not drive but has a free ride pass through the state's Benefit Access program, a taxi pass, and access to paratransit service. (Id. at 40.) Donald was offered a settlement to resolve his on-going worker's compensation claim, but he felt it was not good enough and rejected the offer. (Id.)

Donald completed high school and has worked temporary jobs for the past 15 years. (Id.) Since 2007 Donald has worked part-time as a waiter and uses a cart to serve food instead of lifting when he is working. (Id. at 41.) Donald has not turned down any jobs since 2014. (Id.) He testified that he applied for a job as a security guard in 2015 but felt that the standing requirements were "too long." (Id. at 42.) He also explained that he had recently worked as an exam proctor and the day after the job he "just felt like [his body] had shut down" because he was so tired from standing. (Id. at 58.)

Donald testified that he suffers from petit mal seizures, which cause him to have to sit down and rest. (Id. at 43.) However, he could not remember the last time

5

he had a seizure. (Id.) Donald stated that about a month and a half before the hearing, he had an episode where he had to sit down because he was shaking. (Id. at 44.) He explained that he takes his medication first thing in the morning, and noted that it "does a good job" handling his seizures. (Id.) Every few months, Donald has tremors from taking the seizure medication. (Id. at 45.)

Donald explained that he takes pain medication every day, sometimes four or five times a day, and he can never go back to living "a normal lifestyle" because of his pain. (Id.) He testified that his back pain negatively affects his sleep quality, (id. at 55), and that he also experiences neck pain, (id. at 57). When asked to rate his pain on a scale from one to ten, he answered that when he wakes up his pain is "probably about eight," but after taking his pain medication, the pain is "maybe four." (Id. at 48.) Donald also takes warm showers to ease his pain. (Id. at 49.)

Donald stated that he can stand between two to three hours and sit for about 40 minutes without feeling pain, walk about three to four blocks without resting, and, lift about 15 pounds when he wears his back brace. (Id. at 51.) His doctors have not recommended injections or surgery for his back pain. (Id. at 53.) Dr. Turk has been overseeing Donald's physical therapy since January 2015. (Id. at 54.) Donald's appointments with Dr. Turk typically last about 10 to 15 minutes before his therapy sessions, which last about an hour. (Id.) Donald stated that Dr. Turk told him that he could "return to work with light duty." (Id. at 55.) After working with Dr. Turk, Donald continued therapy at Mercy Hospital. (Id.)

6

## C. VE's Hearing Testimony

The ALJ posed a series of hypothetical questions to the VE about an individual of the same age and education level as Donald. First, the ALJ asked about the jobs this individual could perform if he had a residual functional capacity ("RFC") to perform light work. (A.R. 60.) The ALJ further specified that this individual could occasionally climb ramps and stairs, frequently stoop, kneel, crouch, and crawl, and could tolerate occasional exposure to hazards and extreme cold, but could never climb ladders, ropes, or scaffolds. (Id.) The VE opined that such an individual could perform work as a router, mail sorter, or routing clerk. (Id.)

The ALJ then asked the VE whether those jobs would exist for the same individual who had a sit/stand option of five to ten minutes, could only be exposed to occasional vibration, and could not kneel or crawl. (Id. at 61.) The VE responded that those jobs would still exist. (Id.) The ALJ also asked whether there would be jobs available for the same individual who had the RFC to perform sedentary work. (Id. at 62.) The VE responded that the individual could perform work as an addresser, document preparer, or surveillance system monitor. (Id. at 62.) Finally, the ALJ asked if there would be work available if the same individual would also need to be off-task more than 20 percent of the workday because of pain, and the VE answered in the negative. (Id.)

Donald's attorney then asked whether the jobs the VE gave would be available to the hypothetical individual if he could not be exposed to hazards of any kind. (Id.) The VE responded that the jobs that he identified do not have "machinery" or

7

"unprotected heights." (Id. at 63.) The attorney then asked if those jobs would exist if the individual could not work consecutive days. (Id.) The VE responded that the Dictionary of Occupational Titles does not address that issue, but noted that an individual would be allowed to miss only approximately one and a half days per month of work and could not work if unscheduled breaks would keep him off-task 20 percent of the time. (Id.)

### The ALJ's Decision

The ALJ followed the required five-step process in evaluating Donald's disability claims. *See* 20 C.F.R. § 404.1520(a). After determining that Donald meets the insured status requirements of the Social Security Act, the ALJ found at step one that Donald had not engaged in substantial gainful activity since his alleged disability onset date. (A.R. 17.) At step two the ALJ concluded that Donald suffers from the following severe impairments: epilepsy, one-sided nose breathing, and degenerative disc disease. (Id. at 18.) At step three the ALJ determined that none of Donald's impairments or combination of impairments meets or medically equals any listed impairment. (Id. at 19.) Before turning to step four, the ALJ assessed Donald as having an RFC for light work "except he can occasionally climb ramps and stairs; he cannot climb ladders, ropes, and scaffolds; he can frequently stoop, kneel[,] crouch and crawl; he can tolerate occasional exposure to hazards; and he can tolerate occasional exposure to extreme cold." (Id. at 20.) At step four the ALJ concluded that Donald had no past relevant work, but at step five, she found that he could perform other work that exists in significant numbers in the national economy. (Id. at 23-24.)

## Analysis

Donald argues that the ALJ erred by failing to properly weigh his treating chiropractor's opinion and to adequately consider his subjective complaints. The court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, meaning "more than scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must build "a logical bridge from the evidence to [her] conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

### A. Medical Opinion Evidence

Donald first asserts that the ALJ erred in weighing the opinion of his treating chiropractor, Dr. Turk. According to the regulations, and for purposes of social security disability determinations, a chiropractor is not an "acceptable medical source," cannot offer "medical opinions," *see* 20 C.F.R. § 404.1513(a); SSR 06-3p, and is not considered a "treating physician." *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (distinguishing chiropractors from "treating physicians"). An ALJ may consider a chiropractor's opinions but the weight they will be given will depend on a number of factors, including the degree to which they are supported by objective evidence. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.913(d)(1); SSR 06-3p; *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

9

Here the ALJ assigned "partial, but not controlling weight" to Dr. Turk's opinion because she found it both internally inconsistent and inconsistent with the record evidence. *See Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (internal citations omitted). The ALJ first pointed out that despite opining that Donald's prognosis is "fair to good," (A.R. 412, 588), Dr. Turk inconsistently assessed a number of severe functional limitations, (see id. at 22 (citing id. at 412, 588-92)). The ALJ then found that Dr. Turk's opinion was inconsistent with Donald's statements about his abilities. (Id. (citing id. at 281).) Specifically, Dr. Turk opined that Donald can walk one city block without rest or severe pain, sit for 30 minutes at a time, stand for 5 minutes at a time, walk less than 2 hours, and lift less than 10 pounds. (Id. at 588.) However, Donald stated that he can walk two to four blocks without rest, sit for 30 minutes to 60 minutes, stand for less than 15 minutes to 3 hours, and lift 10 to 15 pounds. (Id. at 281.) Additionally, although Dr. Turk opined that Donald's symptoms are severe enough to constantly interfere with the attention and concentration needed to perform simple work tasks, (id. at 412-13), Donald stated that he can pay attention "well" and follow both written and spoken instructions, (id. at 218). The ALJ also found Dr. Turk's opinion inconsistent with statements Donald made indicating that physical therapy improved his functioning and that his physical therapist told him to stop wearing his back brace. (Id. at 22 (citing id. at 270, 383, 546).)

The ALJ also explained that Dr. Turk's opinion was inconsistent with Donald's interview with the state agency insofar as the "agency did not observe Donald having difficulties with concentration, understanding, sitting, standing, or walking." (Id. (citing id. at 232-33).) The ALJ also found Dr. Turk's opinion inconsistent with the medical evidence, which consistently revealed demonstrations of full strength, range of motion, and sensation, normal gait, and limited treatment for his breathing disorder. (Id. (citing id. at 329, 338, 364, 384, 388, 497, 503).) The ALJ concluded, however, that Dr. Turk's prognosis of "fair to good" is in fact consistent with Donald's physical therapy and treatment records and with Donald's statements about physical therapy, which indicate that his functioning improved with treatment. (Id. at 22.)

Donald next contends that the ALJ failed to specifically address each factor set forth in 20 C.F.R. § 404.1527 when she evaluated Dr. Turk's opinion. While the ALJ in this case did not explicitly weigh each factor in discussing Dr. Turk's opinion, her decision makes clear that she was aware of and considered the factors, including the consistency of Dr. Turk's opinion with the record as a whole and the supportability of his opinion as discussed above. The ALJ also considered Dr. Turk's treatment relationship with Donald. (Id. at 22-23.) For instance, the ALJ explained that Dr. Turk's treatment notes, which span about two months, contain several dates that are close in time, and "suggest that each of Dr. Turk's assessments [is] intended to be of limited duration." (Id. (citing id. at 593-611).) The court may not necessarily agree with the weight the ALJ afforded to Dr. Turk's opinion, but its inquiry is limited to whether the ALJ sufficiently accounted for the § 404.1527 factors, *see Elder v. Astrue,*

529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant § 404.1527 factors), and built an "accurate and logical bridge" between the evidence and his conclusion.

Donald also contends that the ALJ ignored favorable evidence that supported Dr. Turk's opinion, including a function report Donald completed in April 2014 as well as findings by other treatment providers that were consistent with his opinion. Although the ALJ did not discuss Donald's April 2014 function report, (A.R. at 258), the ALJ did discuss a more recent December 2014 report, which Donald completed after engaging in more than nine months of physical therapy, (see id. at 276-83). Furthermore, contrary to Donald's contention, the ALJ mentioned findings from other providers documenting his degenerative disc disease, limited functional capacity, and decreased muscle strength in his lower extremities. (See id. at 21 (citing id. 313, 458, 460).) However, these findings were made during initial imaging and physical therapy sessions performed in early 2014 and are inconsistent with other evidence in the record demonstrating that Donald's functioning has improved with treatment. Accordingly, the court does not fault the ALJ for failing to discuss this pre-treatment evidence in detail.

Moreover, the ALJ properly relied on the state medical consultants' opinions that Donald is capable of performing light work. (A.R. 22 (citing id. at 82, 98).) The ALJ explained that she gave the state medical consultants' opinions "great weight," finding them "consistent with the record as a whole, including [Donald's] repeated demonstrations of full strength, range of motion, and sensation, as well as his

12

repeated demonstrations of normal gait." (Id. at 31.) Donald essentially contends that the ALJ should have weighed the evidence differently than she did, but it is not the court's role to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be balanced. *See Pepper*, 712 F.3d at 362. Accordingly, the court finds no basis for remand in the ALJ's analysis of the medical opinions submitted in this case.

**B.     Subjective Symptom Evaluation**

Donald next contends that the ALJ improperly evaluated his subjective symptoms. The ALJ's credibility determinations are entitled to special deference. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). The court will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is "patently wrong," meaning it lacks explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence. *Id.*

As an initial matter, the court rejects Donald's assertion that the ALJ applied an improper standard and failed to follow the regulatory requirements in his symptom assessment. The ALJ began the RFC determination by reciting the standard for a finding of disability under 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-4, 1996 WL 374187 (July 2, 1996), which requires the ALJ to consider all of a claimant's "symptoms, including pain, and the extent to which [his] symptoms can

13

reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ then stated:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(A.R. 20.) The Seventh Circuit has declared the "not entirely consistent" boilerplate to be meaningless, but this language does not undermine the ALJ's symptom assessment "if [s]he otherwise points to information that justifies [her] credibility determination." *See Pepper*, 712 F.3d at 367-68. In this case, the ALJ provided several reasons for her conclusion that Donald's allegations "are not entirely consistent" with the evidence.

Next, the court rejects Donald's argument that the ALJ failed to identify which of his symptom allegations she found to be inconsistent with the evidence or how inconsistent she found the allegations to be. First, the ALJ explained that Donald has made statements that are inconsistent with his allegations. (A.R. 21.) The ALJ noted that in June 2014 Donald told his physical therapist that he was "doing well, [his] back felt better," (id. (citing id. at 556)), and that he experienced low back pain "on rare occasions when he [had] to lift bags of garbage," (id. (citing id. at 558)). The ALJ then pointed out that in a July 2014 Disability Report, Donald indicated that since he had started physical therapy, he could "move around a little better," (id. (citing id. at 270)), and in August 2014 reported that he was "doing well" and

experienced "no further lower back pain," (id. (citing id. at 383)). The ALJ also discussed how Donald's behavior contradicted the record, noting that Donald continued to wear his back brace "despite the fact that his physical therapist told him not to." (Id. at 22 (citing id. at 383).)

Donald also argues that the ALJ improperly considered his history of treatment in assessing his credibility. He contends that the ALJ should have explored the reasons that his anti-seizure medication was at subtherapeutic levels before drawing a negative inference against his credibility. The Seventh Circuit has held that "[a]lthough a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). In assessing Donald's symptom allegations, the ALJ stated:

> The claimant has been on seizure medication since the time he was diagnosed with seizures. Although his medication has not always been at therapeutic levels, he has indicated on multiple occasions that he is compliant with his regime. Furthermore, the record indicates that his seizure treatment since his alleged onset date has consisted only of medication.

(A.R. 21.) Although Donald contends that the ALJ should have explored the reasons his medication at times was not at therapeutic levels, the ALJ did not accuse Donald of being noncompliant with his medication. Rather, the ALJ noted that Donald had consistently maintained that he was compliant with his medication. (Id. at 362.) In any event, any error in improperly considering Donald's treatment history in regard to his seizures amounts to harmless error as the medical record and Donald's

15

testimony establishes that his seizures are well-controlled with medication. (Id. at 19, 44.) *See Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) ("We will uphold the ALJ's decision if it is supported by substantial evidence.").

Donald also argues, citing *Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009), that the ALJ should have identified additional appropriate treatment to address his impairments before discounting his symptom allegations. In *Myles*, the ALJ improperly "played doctor" by concluding that the claimant's diabetes was not a significant problem because his treating physicians did not prescribe insulin. *Id.* at 677. The Seventh Circuit explained that because "no doctor gave any reason why insulin was not prescribed," the ALJ's inference that it signified a small problem was "wholly unsupported by the record." *Id.* at 677-78. The ALJ in this case did not draw inferences that were not supported by the record and did not play doctor. Instead, the ALJ recited objective medical evidence showing normal functioning and considered Donald's reports of improvement in his symptom as well as pain control with medication to support his credibility determination.

As to Donald's claim that the ALJ improperly ignored his testimony that his doctors recommended against back injections because of a bulging disc, the ALJ was not required to accept or even mention this evidence. *See Pepper*, 712 F.3d at 362 (finding that an ALJ "need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion"). Moreover, as the government points out, Donald does not cite any medical evidence to corroborate the alleged

medical advice and thus the only evidence supporting this finding is Donald's self-serving hearing testimony.

Finally, the court disagrees with Donald that the ALJ improperly relied on his failure to quit smoking in rendering her determination. In assessing Donald's symptom allegation in regard to his breathing impairment, the ALJ noted that "although Donald had been advised to stop smoking, he has not." (A.R. 21 (citing id. at 341, 386).) Donald is correct that the Seventh Circuit has criticized the failure to stop smoking as "an unreliable basis on which to rest a credibility determination" because of the addictive nature of smoking. S*ee Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). However, the ALJ's reliance on Donald's cigarette smoking is a small part of the ALJ's credibility determination which was otherwise supported with substantial evidence. To be sure, the ALJ also found Donald's history of conservative treatment and exams indicating normal pulmonary functioning suggest that his breathing impairment is not as limiting as Donald alleges. (A.R. 21 (citing id. at 364, 415, 427, 497, 525).) Thus, any error on this account does not require reversal. *See Carroll v. Barnhart*, 291 F. Supp. 2d 783, 796 (N.D. Ill. 2003) (finding that "the ALJ's reliance on the plaintiff's smoking habits had no effect on the claimaint's disability determination, and thus does not justify a reversal" where credibility determination was otherwise supported).

## Conclusion

For the foregoing reasons, Donald's motion for summary judgment is denied and the Commissioner's decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**